UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANTHONY D. CROTHERS,                      :

                     Plaintiff,          :

                  -against-                 :

ACTING CAROLYN W. COLVIN,           :
COMMISSIONER OF SOCIAL SECURITY,
Social Security Administration,                 :

                Defendant.
--------------------------------------------------------X

**REPORT AND RECOMMENDATION**

13-CV-4060 (VEC) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Anthony D. Crothers ("Crothers") commenced this action against the Commissioner of

Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ")

decision, dated October 26, 2011, finding him ineligible for disability insurance benefits

("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434,

and Supplemental Security Income ("SSI") benefits, pursuant to SSA Title XVI, 42 U.S.C.

§§ 1381-1385.   Before the Court are the parties' respective motions for judgment on the

pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The plaintiff

seeks an order: (1) reversing the Commissioner's final decision with remand for additional

administrative proceedings, "including but not limited to, a supplemental administrative hearing

and a new decision"; and (2) "[a]pproving the contingent fee agreement between plaintiff and

[his] counsel under 42 U.S.C. § 406(b) and awarding plaintiff reasonable attorney's fees

pursuant to the Equal Access to Justice Act ['EAJA'], 28 U.S.C. § 2412(d)." The defendant

seeks an order affirming the finding that the plaintiff is ineligible for benefits.

## BACKGROUND

*Administrative Procedural History*

Crothers filed his DIB application on July 6, 2010, and his SSI application on July 9,

2010, alleging he became disabled beginning January 1, 2006. On July 20, 2011, an

administrative hearing was postponed to allow Crothers time to obtain an attorney. On October

6, 2011, the ALJ conducted a hearing, at which Crothers testified without counsel. On October

26, 2011, the ALJ denied Crothers's applications. On May 20, 2013, the Appeals Council

denied review of the ALJ's decision, rendering it the final decision of the Commissioner. This

action followed.

*ALJ's Decision*

The issue before the ALJ was whether Crothers was disabled from January 1, 2006. The

ALJ found that Crothers: (1) meets SSA's insured status requirements, through September 30,

2009; (2) has not engaged in substantial gainful activity, since January 1, 2006; (3) has severe

impairments: depression, posttraumatic stress disorder, hypertension, history of sleep apnea and

history of bronchitis, and these impairments cause more than minimal functional limitations;

(4) does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5) has the residual functional capacity to perform light work, except he cannot perform fast-

paced production work or tasks requiring more than 2 to 3-step instructions, can interact

occasionally with supervisors, coworkers and the public and should avoid excessive smoke, dust

and other known respiratory irritants; (6) has no past relevant work; (7) was born in 1965;

(8) has at least a high school education and is able to communicate in English; and (9) does not have past relevant work and transferability of job skills is not an issue.  Moreover, the ALJ concluded that, considering Crothers's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, and he has not been under disability, from January 1, 2006.

In determining whether Crothers has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, the ALJ found that Crothers had mild restrictions in activities of daily living and moderate difficulties in social functioning.  Crothers experienced no episodes of decompensation of extended duration.  The ALJ found that Crothers can wash dishes, wash clothes, sweep and mop the floor, vacuum, make beds, shop for groceries, cook meals, dress and groom himself.  The ALJ noted that Dr. Christopher Flach ("Dr. Flach") found in a consultative psychological evaluation that Crothers: (i) was able to follow and understand simple directions and instructions; (ii) could perform simple tasks independently; (iii) had mild problems maintaining attention and concentration; (iv) was able to maintain a regular schedule; (v) was learning new tasks and performed complex tasks independently; and (vi) seemed to make appropriate decisions, although he had mild problems relating to others and dealing with stress.  According to Dr. Flach, the results of his examination of Crothers appeared consistent with psychiatric problems, which by themselves do not seem to interfere significantly with Crothers's ability to function on a daily basis.  Thus, the ALJ concluded that Crothers's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration.

The ALJ found that no medical documented history exists of a chronic mental disorder of at least two years in duration, and no evidence exists of repeated episodes of decompensation or

a residual disease process that has resulted in such marginal adjustment that even a minimal

increase in mental demands or change in the environment would be predicted to cause Crothers

to decompensate.  Moreover, no evidence exists that Crothers cannot live outside a highly

supportive living arrangement or function independently outside his home.

      The ALJ assessed Crothers's residual functional capacity to perform work.  He noted that

Crothers testified at the hearing that he graduated from high school and was in special education

classes.  Crothers had problems with "big" words in the newspapers.  He is divorced, has six

children and lived with his sister.  He was incarcerated from 1996 to 1997, and from 2006 to

2009, for assault.  Crothers testified that he was taking anger management classes.  He admitted

that he had no physical limitations and was able to take care of his hygiene.  Crothers used to

work for a moving company and would do that again if he had a job.  He suffered from sleep

apnea.  Crothers arrived at the hearing via the subway, but he does not like being in a crowded

subway.

      The ALJ noted that Crothers received treatment and services from the Federation

Employment Guidance Service ("FEGS").  On March 29, 2010, a FEGS social worker gave

Crothers a Patient Health Questionnaire PHQ-9 score of 23, severe depression.  In a FEGS

psychiatric assessment, completed in March 2010, it was noted that Crothers had mild functional

impairment in his ability to follow work rules and moderate functional impairment accepting

supervision, dealing with the public, maintaining attention, relating to coworkers, adapting to

change and stressful situations.  Crothers was diagnosed with impulse control disorder and

posttraumatic stress disorder, and was found disabled from work temporarily, likely to return to

full-time work, with treatment, in three months.

In November 2009, Crothers was mandated by parole to Greenwich House for treatment of cannabis abuse and to attend anger management classes.  Psychiatric nurse practitioner, Meredith Conroy, noted in a letter, dated June 30, 2010, that Crothers had been a client at Greenwich House's Chemical Dependency Program, since November 2009, where he received substance abuse counseling, attended anger management classes and obtained psychiatric services.  She noted that Crothers was diagnosed with major depression, single episode, moderate, anxiety disorder not otherwise specified and antisocial personality disorder.  Crothers reported, in an assessment, dated June 16, 2010, that he felt much better and was sleeping well. He also tested positive for cocaine, but denied using it, alleging his hand came into contact with it.

On July 30, 2010, Dr. Barbara Ballen ("Dr. Ballen") conducted a consultative physical examination of Crothers.  Dr. Ballen diagnosed Crothers with sleep apnea, hypertension and bronchitis.  On the same day, Dr. Flach found that Crothers was able to follow and understand simple directions and instructions, could perform simple tasks independently, had mild problems maintaining attention and concentration, was able to maintain a regular schedule, was learning new tasks and performed complex tasks independently and seemed to make appropriate decisions and have mild problems relating to others and dealing with stress.

The ALJ explained that he gave fairly considerable weight to the consultative examiners' reports because they gave Crothers thorough examinations and their findings were consistent with other evidence in the record.  The ALJ found that Crothers's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Crothers's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible, to the extent that they were inconsistent with the residual functional capacity

assessment. The ALJ also noted that he gave minimal weight to the State agency psychological consultant's mental assessment, since that consultant was non-examining. The ALJ concluded that his residual functional capacity assessment is supported by the credible evidence and he noted that he was mindful of Crothers's physical impairments, for which he accounted for, by reducing his residual functional capacity to light work, avoiding excessive smoke, dust and other respiratory irritants. Additionally, the ALJ also considered Crothers's emotional problems and determined that Crothers cannot perform fast-paced production work or tasks requiring more than two to three-step instructions and he can occasionally interact with supervisors, coworkers and the public.

In determining whether a successful adjustment to other work can be made, the ALJ considered Crothers's age, education and work experience. Finding that the additional limitations had little or no effect on the occupational base of unskilled light work, the ALJ concluded that Crothers was not disabled.

***Plaintiff's Contentions***

Crothers contends that: (1) the ALJ failed to develop the record; and (2) the mental functional limitations found by the ALJ precluded reliance on the medical vocational rules. He asserts that "the ALJ failed to [sic] in his duty to seek out a statement from the treating psychiatrist," and he "was duty bound to advise Mr. Crothers that his treating psychiatrist's opinion was paramount and that under proper application of the Social Security regulations could weigh heavily in his favor." Crothers contends that the record before the ALJ included "two unsigned and undated psychiatric report forms that are mentioned nowhere in the ALJ's decision and which provide ample support for Mr. Crothers' disability claim." According to Crothers, "[i]n the F.E.G.S. adult assessment and psychological report (Tr. 270-75)," he "is

described 'feeling angry and acting out violently.'"  Crothers was assigned a GAF [Global Assessment of Functioning] score of 48, "which is sufficiently low to support a finding of disability."  Crothers contends that "[i]n another unsigned and undated report, Mr. Crothers is described as being 'consistently irritable with intermittent periods of aggressiveness indicated by repeated physical fights.  Tr. 219.  It was noted that his anti-social personality disorder was chronic illness not likely to go into complete remission."  Crothers maintains that it was error for the ALJ not to address these reports or seek clarifying information about the scope of his functioning relevant to determining his claim.

Crothers asserts that the ALJ erred in applying medical vocational rule § 202.20, notwithstanding that he determined that Crothers had multiple significant non-exertional limitations, namely, an inability to: (1) perform fast-paced production work; (2) perform tasks requiring more than two or three instructions; (3) interact with supervisors, coworkers and the public more than occasionally; and (4) be exposed to dust and other known respiratory irritants. Crothers maintains that the significant non-exertional mental limitations found by the ALJ, alone and in combination, would preclude reliance on the medical vocational rules and would direct a finding of disability, or, at minimum, the ALJ should have presented these functional limitations to a vocational expert to ascertain the impact of the established functional limitations on the potential work base.  As a result of this error, the ALJ concluded, erroneously, that the limitations posed no impact.

***Defendant's Contentions***

The defendant contends that substantial evidence supports the ALJ's residual functional capacity determination.  She maintains that the ALJ evaluated properly the medical evidence in the record, which supports his findings.  The defendant asserts that the ALJ met his obligation to

develop the record, because he obtained: (i) two consultative examinations; (ii) the review of a state-agency physician; and (iii) Crothers's treatment records.  According to the defendant, Crothers failed to identify a specific treating physician who treated him regularly and could have provided a detailed assessment.  The defendant contends that the two reports the ALJ did not mention are not treating physician opinions and are not entitled to special weight, and the ALJ was not required to set forth and analyze every piece of evidence.

The defendant asserts that the ALJ's limiting Crothers to occasional interactions with supervisors, coworkers and the public did not erode significantly his occupational base because, according to Social Security Administration ruling "SSR 85-15," unskilled work involves, generally, working with objects rather than people.  Thus, the mental restrictions found by the ALJ are consistent with unskilled work and do not affect the unskilled occupational base.  According to the defendant, Crothers's claim that the ALJ found additional mental limitations that further eroded his occupational base has no merit because the limitations to which Crothers refers were used by the ALJ when making determinations at step two and three of the sequential evaluation, and the psychiatric review technique form is not a residual functional capacity assessment.

***Plaintiff's Reply***

In reply, Crothers contends that the "F.E.G.S. psychiatric report at Tr. 270-75 is precisely the type of evidence that cannot be ignored by an adjudicator."  According to Crothers, "the F.E.G.S. report" in the record contains only odd page Nos. 3, 5, 7, 9 and 11, out of 12, suggesting that it is 12 pages long, and that it "was likely a double-sided report that when it was transmitted to [the Social Security Administration], only the odd pages were reproduced."  He asserts:

8

> So, we don't know the precise author of this opinion or whether they [sic] treated Mr. Crothers for any extended period. But we know that when Mr. Crothers applied for benefits in 2010, he states that he was being treated at the Caroline K. Simon Counseling Center at 80 Van Dam Street. Tr. 147-48. He explained that his prescription for the psychiatric medications Trazadone and Depakote were [sic] being filled by this treatment center. . . . When we look for the name Caroline K. Simon Counseling [Center], we see that this is the name of a psychiatric center administered by F.E.G.S. . . . So from the record, we can see that F.E.G.S. was in fact a "treating source."

Crothers contends that the ALJ had a duty to inquire of him about his treating sources and to ensure that the record contained reports from those sources. According to Crothers, the ALJ "did not realize that the report at Tr. 27-75[1] was in fact part of a treating psychiatrist report. But even if this was not from a treating source, the report itself identifies significant limitations in concentration (Tr. 271 - - 'poor' concentration and memory) that even if it were only an examining report, the ALJ was obliged to acknowledge and address evidence favorable to Mr. Crothers' case."

Concerning the defendant's contention that the unskilled work involves dealing with objects rather than people, Crothers explains that, where the Social Security Administration ruling invoked by the defendant discusses workers dealing with objects rather than people, that statement is addressed to the worker who is able to perform at the medium and heavy levels in addition to the light and sedentary levels; but the ruling offers no guidance on the erosion of the unskilled light occupational base when an individual is limited to no more than an occasional interaction with coworkers and supervisors. Crothers contends that an individual limited to interacting with coworkers and supervisors no more than one-third of the day would have a substantial loss in the ability to function in this area. According to Crothers, at minimum, the

---

[1] The Court assumes this is an error and the plaintiff meant to say "Tr. 270-75."

ALJ was obligated to call a vocational expert to examine the impact of this limitation on the unskilled light work base.

***Legal Standard***

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration's] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

10

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further.  At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity."  At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Melville, 198 F.3d at 51.  The Social Security Administration's regulations require that the ALJ develop the claimant's complete medical history and "make every reasonable effort" to assist the claimant in obtaining medical records.  See 20 C.F.R. §§ 404.1512(d), 416.912(d).  Reasonable effort "entails more than merely requesting reports from the treating physicians.  It includes issuing and enforcing subpoenas requiring the production of evidence," as well as "advising the plaintiff of the importance of the evidence." Jones v. Apfel, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999).

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citations

omitted).

> In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record. Further, the ALJ must not only develop the proof but carefully weigh it. Finally, even when a treating physician's opinion is not given controlling weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive. The ALJ must consider, *inter alia*, the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion, the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues. . . . After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

> Id. at 129 (internal quotation marks, alterations and citations omitted).

> When a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are "heightened." The ALJ must "adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." And when a claimant appears *pro se* and is otherwise impaired, we must "make a searching investigation of the record to make certain that the claimant's rights have been adequately protected."

> Moran v. Astrue, 569 F.3d 108, 113 (2d Cir. 2009) (alterations and internal citations omitted).

"Although the claimant bears the general burden of proving that he is disabled under the

statute, 'if the claimant shows that his impairment renders him unable to perform his past work,

the burden then shifts to the [Commissioner] to show there is other gainful work in the national

economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir.

2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Ordinarily, the Commissioner's burden is met "by resorting to the applicable medical vocational

guidelines." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citation omitted). In considering

work which exists in the national economy, the ALJ "will decide whether to use a vocational

expert or other specialist." 20 C.F.R. §§ 404.1566(e); 416.966(e).

> [T]he mere existence of a nonexertional impairment does not automatically require
> the production of a vocational expert nor preclude reliance on the guidelines. A
> more appropriate approach is that when a claimant's nonexertional impairments
> significantly diminish his ability to work—over and above any incapacity caused
> solely from exertional limitations—so that he is unable to perform the full range of
> employment indicated by the medical vocational guidelines, then the
> [Commissioner] must introduce the testimony of a vocational expert (or other similar
> evidence) that jobs exist in the economy which claimant can obtain and perform.

Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).

*Application of Legal Standard*

Failure to Develop the Record

Contrary to Crothers's contention, the ALJ acknowledged both, the FEGS "Behavioral

Health Services Adult Assessment & Psychosocial" report (Tr. 270-75) and the "Treating

Physician's Wellness Plan Report" (Tr. 219) in his decision. The "List of Exhibits" attached to

the ALJ's decision (Tr. 20-23) describes: (a) Exhibit "2F," as "Office Treatment Records,"

consisting of 61 pages, "Source FEGS," "Dates 12/02/2009 to 07/06/2010"; and (b) Exhibit

"10F," as "Medical Report/General," consisting of 6 pages, "Source Caroline K. Simon

Counseling," "Dates 08/25/2010 to 08/25/2010." In his decision, the ALJ referred to the content

of and made citation to Exhibit 2F, containing the "Treating Physician's Wellness Plan Report"

(Tr. 219), five times (Tr. 15, 17-18), and Exhibit 10F, the FEGS "Behavioral Health Services

Adult Assessment & Psychosocial" report (Tr. 270-75), once (Tr. 17).

The defendant's contention that the FEGS "Behavioral Health Services Adult

Assessment & Psychosocial" report (Tr. 270-75) and the "Treating Physician's Wellness Plan

Report" (Tr. 219) are not treating physician opinions containing detailed assessments of his

functioning, but rather "mere unsigned treatment reports," entitled "to no special weight," is unsupported by the record.  Exhibit 2F (Tr. 167-227), referenced by the ALJ in his decision, contains a one-page document entitled the "Treating Physician's Wellness Plan Report" (Tr. 219).  The title of the document, "Treating Physician's Wellness Plan Report," states explicitly that it is a treating physician's report.  The record demonstrates that Crothers was "referred to the three month wellness plan for the condition of: Major depression, recurrent PTSD Impulse control disorder Learning disability," and the plan was "scheduled to end on 7/4/10."  (Tr. 197). The "Treating Physician's Wellness Plan Report" diagnoses Crothers with major depression, recurrent, moderate, anxiety disorder not otherwise specified and antisocial personality disorder. It describes Crothers as consistently irritable with intermittent episodes of aggressiveness, as indicated by repeated physical fights.  It notes that Crothers's antisocial personality disorder is a chronic psychiatric illness that will likely not go into complete remission, and that he will likely suffer impulsivity and agitation for a long period of time.

The ALJ gave: (a) "fairly considerable weight to the consultative examiners because review of their reports reveals that they gave claimant a thorough examination and their findings were consistent with other evidence in the record"; and (b) "minimal weight to the State agency psychological consultant's mental assessment since this consultant was non-examining." However, the ALJ did not identify "the State agency psychological consultant's mental assessment," and the Court's review of the record does not reveal a document identifying "the State agency psychological consultant's mental assessment."  Thus, the Court concludes that, when the ALJ referred to "the State agency psychological consultant's mental assessment," he did not refer to the "Treating Physician's Wellness Plan Report," contained in Exhibit 2.

The ALJ committed an error by failing to assign any weight to the treating physician's

14

report entitled "Treating Physician's Wellness Plan Report," which is part of Exhibit 2F.  Given that: (i) Crothers was treated by FEGS for a prolonged period, while he was attending the wellness plan; and (ii) Exhibit 2, in addition to the "Treating Physician's Wellness Plan Report" also contains notes by a psychiatrist, Dr. Hun Han ("Dr. Han"), who examined Crothers and diagnosed him with "HTN, Sleep apnea, SA, Major depression, recurrent PTSD Impulse control disorder Learning disability, Hyperlipidemia" (Tr. 186).  The ALJ committed an error by not assigning any weight to this treating physician's wellness plan report or discussing it in his decision, beyond mere reference to it.

Exhibit 10, the FEGS "Behavioral Health Services Adult Assessment & Psychosocial" report (Tr. 270-75) is an incomplete, 12-page document, because it shows, explicitly, that it consists of odd page numbers only, namely, "1 of 12p," "3 of 12p" "5 of 12p," "7 of 12p," "9 of 12p" and "11 of 12p," and omits even page numbers 2, 4, 6, 8, 10 and 12.  The "Behavioral Health Services Adult Assessment & Psychosocial" report diagnoses Crothers with a psychotic disorder not otherwise specified and intermittent explosive disorder.  It states that Crothers's GAF is 48.  "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  Furthermore, the report describes Crothers as feeling angry and acting out violently.  Given that Crothers was treated by FEGS while he attended the wellness plan for his mental conditions, and the record contains other notes and reports by Dr. Han, a FEGS psychiatrist who treated Crothers during that time, the ALJ committed an error when he considered the incomplete Exhibit 10, without developing the record to assure its completeness. The ALJ had an affirmative duty to obtain the missing pages, especially because the odd pages he considered contain information favorable to Crothers, who proceeded pro se, and it can be

15

inferred from the record that the report may be a treating physician report.  The ALJ failed to discharge his duty to develop the record.

### Reliance on the Medical Vocational Rules

The ALJ found that Crothers had non-exertional mental limitations.  He explained the legal standard he used to determine whether, considering Crothers's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Crothers can perform.  The plaintiff's contention, that the ALJ's findings of additional limitations precluded his reliance on the medical vocational rules and required the ALJ to use a vocational expert, is without merit.  The use of a vocational expert by the ALJ is discretionary.  See 20 C.F.R. §§ 404.1566(e); 416.966(e).  Although the Social Security Administration's regulations permit the use of a vocational expert or other specialist, "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue," 20 C.F.R. §§ 404.1566(e); 416.966(e), the ALJ did not find that was necessary in Crothers's case, since he determined that his non-exertional impairments do not significantly diminish Crothers's ability to work, such that he is unable to perform the full range of employment indicated by the medical vocational guidelines.  Thus, the Court finds that the ALJ did not commit an error and he did not abuse his discretion when he failed to use a vocational expert.

### Attorney's Fees

The plaintiff's notice of motion seeks an order remanding the case to the Commissioner and approving his contingent fee arrangement with counsel, under the SSA, 42 U.S.C. § 406(b), and awarding him reasonable attorney's fees, under the EAJA, 28 U.S.C. § 2412(d).  Although

"an attorney may apply for and be awarded fees under both the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and the Social Security Act (SSA), 42 U.S.C. § 406(b)," Wells v. Sullivan, 907 F.2d 367, 368 (2d Cir. 1990), where a district court does not make a finding on the merits with respect to the claimant's disability and merely remands the case to the Commissioner for the taking of additional evidence, no fees are in order pursuant to EAJA.  See McGill v. Sec'y of Health & Human Servs., 712 F.2d 28, 31-32 (2d Cir. 1983) ("a social security claimant prevails when it is determined that she is entitled to benefits").  The plaintiff failed to make any argument or citation to any binding authority in support of his contention that he is entitled to attorney's fees under the SSA and the EAJA.  Accordingly, no relief is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the plaintiff's motion for judgment on the pleadings, Docket Entry No. 12, be granted, in part, and the case remanded to the Commissioner for further proceedings, pursuant to Sentence four of 42 U.S.C. § 405(g); and (2) the defendant's motion for judgment on the pleadings, Docket Entry No. 22, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni, 40 Centre Street, Room 240, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Caproni.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and***

*will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
      February 3, 2015

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

18